[No. 29728. Department One. October 5, 1945.]

*In the Matter of the Appeal of* CONSTITUTIONAL GOVERN-MENT LEAGUE *from the decision of the Commissioner of Unemployment Compensation and Placement.*[1]

[1]Reported in 162 P. (2d) 453.

*Wright & Wright* (*John Kelleher,* of counsel), for appellant.

*The Attorney General* and *Bernard A. Johnson, Assistant,* for respondent.

MILLARD, J.—This appeal is prosecuted by the Constitutional Government League, a nonprofit corporation, organized May 24, 1933, under the provisions of Rem. Rev. Stat., § 3873 [P. P. C. § 457-3] *et seq.,* by E. H. Rettig and the immediate members of his family, from a judgment of the superior court for King county, which affirmed findings of the commissioner of unemployment compensation and placement that the corporation was liable in the amount of $160.68 for contributions to the unemployment compensation fund, as assessed on the remuneration of E. H. Rettig,

who was engaged in the administration and operation of the "Death Fund" of the corporation.

It is the position of counsel for respondent that appellant corporation is not organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, therefore the money received from the corporation by Mr. Rettig, its president and owner, is wages as that term is defined in the unemployment compensation act. Counsel for appellant argue that it, appellant, is a nonprofit corporation organized under the provisions of Rem. Rev. Stat., § 3873 et seq., for the purpose of religious and educational instruction, therefore it may not be denied exemption under the unemployment compensation act merely because it operates a death benefit business which is specifically permitted by the laws under which appellant is organized; and that the mere fact that the manager of appellant, which is a charitable corporation, charged for his services to the corporation does not exclude the corporation from the exemption provision of the unemployment compensation statute.

The statute (Rem. Rev. Stat., § 3872 [P. P. C. § 457-1]) provides that two or more persons within this state who associate themselves together by an agreement in writing, as further described in the statute, with the intention of forming a corporation for any of the purposes specified, upon complying with the provisions of Rem. Rev. Stat., §§ 3875, 3876, 3877 [P. P. C. § 457-7, 457-9, 457-11]—these provisions relate to the first meeting of the subscribers to the agreement, to the duties of the temporary secretary, and the form, contents, and filing of the agreement—shall be a corporation.

"Such association may be formed for any educational, charitable, benevolent or religious purposes; for the prosecution of any antiquarian, historical, literary, scientific, medical, artistic, monumental or musical purpose; for supporting any missionary enterprise having for its object the dissemination of religious or educational instruction; for promoting temperance or morality in this state; or other charitable or social bodies of a like character and purpose; for the establishment and maintenance of social clubs, and

of places for reading rooms, libraries or social meetings." Rem. Rev. Stat., § 3873.

"The corporation organized for any purpose mentioned in section 3873 may, for the purpose of assisting widows, orphans or other persons dependent upon deceased members, provide in its by-laws for the payment by each member of a fixed sum, to be held by such association until the death of a member occurs, and then to be forthwith paid to the person or persons entitled thereto; and such fund so held shall not be liable to attachment by garnishment or other process. And the associations may be formed under this act for the purpose of rendering assistance to such persons, and in the manner herein specified." Rem. Rev. Stat., § 3879 [P. P. C. § 457-15].

"Any such beneficiary corporation or society may hold at any one time as a death fund, belonging to the beneficiaries of anticipated deceased members, an amount not exceeding one assessment from a general or unlimited membership, or an amount not exceeding in the aggregate one assessment from each limited class or division of its members: Provided, that nothing in this section shall be held to restrict such fund to less than ten thousand dollars. Such funds, while held in trust, shall be deposited in safe banking institutions, subject to sight drafts for distribution to the beneficiaries aforesaid." Rem. Rev. Stat., § 3880 [P. P. C. § 457-17].

"The provisions of the general laws relating to life insurance companies shall not apply to such beneficiary corporations, associations and societies." Rem. Rev. Stat., § 3881 [P. P. C. § 457-19].

The purpose and object for which appellant was formed is recited in Art. II of articles of incorporation as follows:

"The purpose and object for which the corporation is formed, is to promote and secure the restoration of 'a government of the people, by the people, and for all the people' as proposed in Our Program, which, as it may be amended from time to time, shall constitute the constitution of the corporation, and also to do all the things stated and provided for in Sections 3873 to 3881 of Remington's Code, thereby suggesting by precept and example a practical and scientifically sound plan of political and economic rehabilitation."

Appellant solicited and accepted applications for regis-

tration from individuals for various units from one-half to five units each as "voluntary contributors to the death fund" of appellant corporation. That fund, which appellant argues was authorized by Rem. Rev. Stat., § 3879, quoted above, pays death benefits to the beneficiary of the person or persons enrolled. The voluntary contributions to the mortuary fund are specified amounts according to the age of the applicant and the number of units purchased by the applicant. The units provide the following death benefit: One-half unit two hundred fifty dollars, one unit five hundred dollars, two units one thousand dollars, three units one thousand five hundred dollars, four units two thousand dollars, five units two thousand five hundred dollars.

Mr. Rettig, one of the original incorporators, became president of the corporation and has continued to hold that office from 1933 until the present time. Other individuals have served as corporate officers, including the president's son and daughter, but appellant was a corporation sole, with respect to Mr. Rettig, without authorized capital stock or par value shares. Appellant allocated twenty per cent of the gross voluntary contributions to an operating fund for administrative expenses, which fund was disbursed for salaries and commissions, advertising, printing, and general office expense. Eighty per cent of the contributions were allocated to a benefit fund from which death benefits were paid to beneficiaries.

For the period 1941 to 1944, Mr. Rettig received $5,951.27 from the operating fund. Respondent demanded payment in the total amount of $160.68, representing assessment on wages or remuneration of Mr. Rettig, who is engaged in administration and operation of the death fund.

Appellant insisted at the hearing before the division of unemployment compensation and placement that the amounts Mr. Rettig received were for sustenance and were not wages or remuneration for services performed for appellant. He received the amounts aggregating $5,951.27 as president and performed the services required by appellant in connection with the solicitation of contributions, accep-

tance of applications for death benefits, payments to beneficiaries and all matters pertaining thereto. Other individuals who solicited and obtained applications for registration for appellant were permitted to retain the initial contribution as a commisson or *sustenance* for their services.

. Appellant insists that it was formed under the provisions of Rem. Rev. Stat., § 3872 *et seq.*, and that under Rem. Rev. Stat., § 3881, quoted above, it was exempt from the provisions of the general laws relating to life insurance companies; therefore, it was exempt from liability for contributions to the unemployment compensation fund as assessed on wages or remuneration of individuals engaged in the administration and operation of the death fund.

Appellant is not affiliated with a recognized religious, charitable, scientific, literary, or educational institution. All contributions received from registrants for death benefits are retained under the exclusive control and are subject to appellant's order. No trust funds or reserves subject to governmental supervision were established, and bank deposits rather than investments were maintained. Mr. Rettig, as a corporation sole, directed all of appellant's activities. There were no other employees. He was not required to account to stockholders, directors, or state supervisory agencies, and he was not bonded for faithful performance of his duties.

The unemployment compensation act, Rem. Rev. Stat. (Sup.), § 9998-119 [P. P. C. § 928-15] (g) (6) (v) defines employment as service performed for wages or under any contract of hire written or oral, express or implied. The section provides that the term "employment" shall not include,

"Service performed in the employ of a corporation, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to . children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual."

We concur in the view of the trial court that the

statute (Rem. Rev. Stat., § 3873 *et seq.*) was never intended to cover any such corporate operations as those in which appellant engaged.

Almost all of the income of appellant is from the registration fees and contributions to the death benefit fund. The statute (Rem. Rev. Stat., §§ 3879, 3880), the pertinent sections of which are quoted above, provides that the death benefits are for the purpose of assisting widows, orphans, or other persons dependent upon deceased members of the corporations organized under the act in question. Plainly the statute means that benefits are to be paid only on the death of a member and then only to widows, orphans, or other persons dependent upon deceased members. We may assume, as did the trial court, that appellant accepts no designation of beneficiaries that are not properly within the statute. It appears, however, that children two to fifteen years old may be registrants and may presumably name a beneficiary. It would be a rare case for such minors to have "widows, orphans or other persons dependent" upon them. The record affirmatively discloses that the persons who pay the contributions and at whose death the benefits are paid are not members of appellant corporation. Mr. Rettig and the members of his family have been the only officers, other than the two original incorporators, of appellant corporation. Mr. Rettig testified that he was the president and also the owner of the corporation. He said: "I do not believe that you would call that a sole corporation, but it is a closed corporation."

The people who contribute to the mortuary fund do not sign an application for membership in anything. They sign an application for registration. The registrant receives, as evidence of his rights, an acceptance of his application for registration, which certifies that he is entitled to all the privileges and benefits as a voluntary contributor to the death fund of the benevolent societies, as provided in the by-laws and other rules and regulations of appellant corporation. The age limits of the registrants are two to sixty years and it is patent that they are members of nothing other than a death benefit organization. It is plain from

a reading of the statute (Rem. Rev. Stat., § 3872 *et seq.*), as stated by the trial court, that the act had in contemplation associations formed for educational, charitable, benevolent, or religious purposes and the assistance of the members of such associations; that the act had in contemplation some unity of interest and purpose other than the receipt of death benefits, and it was contemplated that death benefits would be payable only on the death of *members* for the purpose of assisting their widows, orphans, or other dependents of such deceased members.

■ True, as argued by counsel for appellant, we should look to the articles of incorporation to determine the purpose and character of a corporation; however, that rule does not foreclose inquiry to determine whether the corporation is, in fact, religious, charitable, scientific, literary, or educational in its operations. The court is concerned with what the corporation actually did rather than what its articles of incorporation said it was empowered to do.

■ To avail itself of the above-quoted exemption provision of the unemployment compensation act, it was incumbent upon appellant to affirmatively show that it was operated exclusively either for religious, charitable, scientific, literary, or educational purposes and that no part of the net earnings of appellant inured to the benefit of any private shareholder or individual.

■ The business of appellant as actually operated was not within the purview of the exemption provision of the unemployment compensation act. Out of the fees paid by the registrant twenty per cent is used for paying expenses of operation, including the "sustenance" to Mr. Rettig. The conclusion is inescapable that this "sustenance" is compensation to Mr. Rettig for personal services in connection with the work of appellant corporation. The testimony is to the effect that twenty per cent of the contributions received are donated to the overhead expense of the corporation—the paying of printing, advertising, and postage—and when anything is left over it is used for sustenance at the end of the year. Exhibit C discloses that appellant's president did not wait until the end of the year, but that he received

"sustenance" each month except one during the period July 1, 1941, to and including March, 1944, the period for which a tax is sought to be collected. The sustenance paid to Mr. Rettig each month was remuneration within the purview of the unemployment compensation statute.

It is unnecessary to review all of the authorities cited as we find none in conflict with what we have said above.

The judgment is affirmed.

BEALS, C. J., STEINERT, SIMPSON, and MALLERY, JJ., concur.

